UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JAMES E. GAYLES #245238 )
)
v. ) NO. 2:04-CV-202
)
WAYNE BRANDON, Warden )

**MEMORANDUM OPINION**

This is a *pro se* petition for a federal writ of habeas corpus filed under 28 U.S.C. § 2254. The petitioner challenges the legality of his confinement under a 1995 state court conviction for first degree murder. This matter is before the Court upon the respondent's motion to dismiss the petition as untimely, and, in the alternative, motion for summary judgment. (Doc. 5).

I. PROCEDURAL BACKGROUND

In 1995, following a trial by a jury in the Criminal Court of Washington County, Tennessee, the petitioner was convicted of first degree murder and sentenced to a life term of imprisonment. The Tennessee Court of Criminal Appeals upheld his conviction, *State v. Gayles*, 1999 WL 351820 (Tenn. Crim. App. July 6, 1999), and he did not pursue further direct review before the Tennessee Supreme Court. The petitioner next filed a petition for post-conviction relief. After

an evidentiary hearing, the trial court denied relief. The petitioner filed an appeal, but the appeal was dismissed on June 14, 2004, upon the petitioner's own motion. On June 22, 2004 (under the "mailbox rule"),[1] the petitioner brought this instant § 2254 application, raising two grounds for relief. In his motion to dismiss, the respondent argues that the petition is time-barred. In his motion for summary judgment, the respondent suggests that the petitioner is not entitled to relief because the standards in 28 U.S.C. § 2254(d) have not been satisfied since the state court's adjudication of his claims was not contrary to or an unreasonable application of the governing legal rules in Supreme Court cases. The petitioner objects to the motion, contending first that his petition is not time-barred; second, that equitable tolling should apply to find it timely; and, third, that, indeed, § 2254's standards have been met in this case.

## II. MOTION TO DISMISS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), *codified* in 28 U.S.C. § 2241, *et seq.*, which amended the federal habeas corpus statutes, imposed a one-year statute of limitations to govern the filing of an application for federal writ of habeas corpus. The statute of limitations begins to

---

[1] Under the "mailbox rule," a petition is deemed to be filed when it is handed to the prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988).

run from the date of one of four triggering events—the relevant one in this case is the date the petitioner's state judgment of conviction becomes final. *See* 28 U.S.C. 2244(d)(1).

The statute, however, provides a tolling mechanism. The time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. . . ." 28 U.S.C. § 2244(d)(2).

In this case, the state appellate court issued its decision affirming the petitioner's conviction on July 6, 1999. The petitioner did not pursue further relief on direct review. Because state law affords the petitioner sixty (60) days within which to petition the state's highest court for permission to appeal from an intermediate appellate court's decision, his conviction became final on September 4, 1999. AEDPA's statute began to run on the petitioner's case at that time and would have expired one year later, on September 4, 2000, unless he had a properly-filed state petition for post-conviction relief or other collateral relief pending during this time which would toll the statute.

The post-conviction petition, pending in the Tennessee state courts from July 5, 2000 to June 14, 2004, did not contain the claims raised in the federal habeas corpus petition. The respondent argues that under, *Austin v. Mitchell*, 200 F.3d 391,

3

395 (6th Cir. 1999), *cert. denied*, 530 U.S. 1210 (2000), a state post-conviction petition which does not assert claims raised in the federal habeas corpus petition is not a "properly filed" petition, and thus, does not toll AEDPA's statute of limitations. The Sixth Circuit, however, has overruled its decision in *Austin v. Mitchell* and has held that state post-conviction proceedings need not raise a federal constitutional claim in order to toll the statute of limitations for a federal habeas action. *See Cowherd v. Million*, 380 F.3d 909, 914 (2004). Therefore, even though the state post-conviction petition did not raise claims raised in the federal habeas petition, it still tolled AEDPA's time clock.

As noted, the petitioner filed a post-conviction petition in the state courts on July 5, 2000, some three hundred and three days after the limitations statute had started to run. The post-conviction petition remained pending until June 14, 2004. (Doc. 6, Addendum No. 6). On that date, the clock resumed ticking and continued to tick until this § 2254 petition was filed eight days later, on June 22, 2004, (Doc. 1, Attachment No. 1), using up three hundred and eleven days of the allotted 365-day period.

Accordingly, the action is timely under § 2244(d) (1) and (d)(2), and the respondent's motion to dismiss the petition as time-barred will be denied.

IV. <u>MOTION FOR SUMMARY JUDGMENT</u>

4

A. **Factual Background**

The factual recitation which follows is taken from the opinion of the Tennessee Court of Criminal Appeals on direct review.

A Johnson City, Tennessee police officer, discovered the victim, Darrell Sturdivandt, lying on his back next to blue vehicle in the parking lot of Pro-Diesel, with what appeared to be a small caliber gunshot wound in the middle of his back. On the ground adjacent to his right foot was a spent .25 caliber shell casing. Expert testimony at trial established that Sturdivandt had alcohol and traces of marijuana in his system when he died and that he died as a result being shot in the back with a .25 caliber bullet.

One witness testified at trial that, on May 2, 1993, he had seen the petitioner walk toward a blue vehicle in the Pro-Diesel parking lot and that, a short time later, he heard a gunshot and saw the petitioner, his hand wrapped in a T-shirt, jog away from the area from whence came the gunfire and get into a van, which then drove off.

A second witness testified that he heard gunfire coming from the Pro-Diesel; that he looked towards that direction and; and that he saw the petitioner run and get in a van. The petitioner yelled, "Let's go, let's go" and the van sped away. A third witness testified that he was a passenger in the van when the petitioner jumped in

5

and yelled, "Let's go." He further stated that he saw the contour of a gun hidden under the petitioner's shirt; that he smelled a firecracker or gunpowder odor on the petitioner; and that the petitioner seemed to act frightened or paranoid. The driver of the van testified also. She stated that the petitioner came running across the street with a gun in his hand, got into the van she was driving and yelled, "Let's go–let's go." The petitioner then said, "What the hell are you all doing...you all are riding around having fun while I just had to do a man." She too testified that she detected an odor of firecrackers or gunpowder on the petitioner when he entered the van.

Witness Alonzo Norman testified that he saw a drug transaction during which an individual gave one dollar to the petitioner for fifty dollars worth of cocaine. Afterwards, the petitioner seemed upset and stated, "Man I seen him before and I'll see him again." He further testified that the petitioner came to his home on May 2, 1993. The petitioner said he wanted to go to New York with Norman, stating "I think I shot somebody" and "the man tried to pull something out on me and I shot him." Norman asked who he had shot and the petitioner responded, "the man that—that gave [me] the dollar for the fifty."

Another witness testified that he was a friend of the victim's and that he had seen the victim steal cocaine from drug dealers by taking it out of their hands and

6

fleeing or by giving them less money that the cocaine was worth. Still another witness testified that, the night prior to the shooting, the petitioner had said that "if people didn't quit messing over him he was going to take somebody out—someone out, or make an example of somebody."

The petitioner presented five witnesses who testified that he was in New York on May 2, 1993.

B. **Standards of Review**

Summary judgment may be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©). The petitioner argues that this case is inapposite for summary judgment because there exist genuine factual disputes. The summary judgment procedure is a device for promptly disposing of actions in which there are no genuine issues as to any material facts. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court FINDS that there are no genuine issues of fact and that this case is susceptible to a summary disposition.

AEDPA limits a federal court's review of issues previously adjudicated and also provides that a federal court should presume that a state court's findings of fact

7

are correct, unless they are based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. It is the petitioner's burden to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In this case, the petitioner has failed to offer clear and convincing evidence to show the factual determinations of the state courts were erroneous. Thus, this Court must presume that the state court's factual findings are correct.

Moreover, a petitioner cannot be granted habeas relief on any claim litigated in the state courts, unless the resulting decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" federal law where a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or reaches a different result than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000). A state court decision is an "unreasonable application" of well established federal law, only where the application is objectively unreasonable, and not just, in the habeas court's independent judgment, an "incorrect" application of law. *Monzo v. Edwards*, 281 F.3d 568, 582 (6th Cir. 2002) (citing *Williams*, 529 U.S. at 411).

C. **The Claims**

1. *Insufficient Evidence*: The petitioner claims, in his petition, that the evidence is insufficient to sustain his conviction for first degree murder since the prosecution did not produce a single iota of proof to establish an intentional, premeditated and deliberate murder. As support for his argument that nothing presented at trial showed his state of mind, he points to the lack of *direct* evidence to show what transpired when he encountered the victim; that he was searching, or having others search, for the victim; or that he even had any conversation relating to the victim on the on the evening of the murder. Though he recognizes, correctly, that a conviction may be based solely on *circumstantial* evidence, *see e.g., Tibbs v. Florida*, 457 U.S. 31, 37-38 n.11 (1983), he argues that the circumstantial evidence presented at his trial did not adequately support his conviction because it did not exclude every other reasonable hypothesis except guilt.

At the time of the crime in 1993, a conviction of first degree murder had to be based upon evidence that the killing was intentional, premeditated, and deliberate. *See* Tenn. Code Ann. § 39-2-202 (1993). On direct appeal, the petitioner claimed that proof of the elements of premeditation and deliberation were

not sufficient, while conceding that the proof was sufficient to support second degree murder.[2]

In addressing whether the evidence of premeditation and deliberation was sufficient to convict, the Tennessee Court of Criminal Appeals cited to various state court cases, as well as to *Jackson v. Virginia*, 443 U.S. 307 (1979), where the Supreme Court stated that, in evaluating the sufficiency of evidence, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. Thus, despite the petitioner's argument to the contrary, the state court did apply the rule in *Jackson* to resolve his claim.

The state appeals court then defined the element of premeditation as "a previously formed design or intent to kill" and the element of deliberation as "cool purpose." *Gayles*, 1999 WL 451820, at *3. It further explained that proof of these elements could come from circumstantial evidence, including facts from which a

---

[2] In the petitioner's appeal brief, he cited to state law which provided that a death caused by the intentional act of another is presumed to be second degree murder, [Addendum No. 2 at 16]; acknowledged that the proof was sufficient to support a second degree murder conviction [*Id.* at 19]; and, thereby, conceded that there was sufficient proof on the "intentional" element.

10

motive might be inferred; declarations of a defendant; use of a deadly weapon on an unarmed victim, and facts about the nature of the killing. *Id.*

Next, the Court of Criminal Appeals examined the proof at trial, which included testimony that the victim had cheated the petitioner in a drug-deal; that the victim had paid the petitioner one dollar for drugs worth fifty dollars; that the petitioner had been upset by this and had said that he had seen that person before and would see him again; that the night before the shooting the petitioner had stated that "if people didn't quit messing over him he was going to take somebody out—someone out, or make an example of somebody;" and that shortly after the shooting, the petitioner had said that he shot the person who paid him one dollar for fifty dollar's worth of drugs. This evidence, according to the state court, demonstrated motive.

The state court also pointed to evidence that showed the petitioner had expressed an intent to get revenge on Sturdivandt. *Id.*, 1999 WL 451820, at *4. This evidence included the petitioner's statements that he would see the person who had cheated him in the drug deal again and that he was going to make an example out of someone. *Id.*

There was also evidence to show that the victim was unarmed based on testimony that no weapons were found on the body or at the scene and that he had never been known to carry a gun or knife. *Id.*

The final type of evidence discussed by the state appeals court was the testimony that the victim was facing away from the shooter when he was killed and that the victim was killed sometime after the drug-transaction. *Id.* The position of the victim showed deliberation, according to the appeals court, while the lapse of time between the killing and the drug transaction demonstrated that the petitioner had had time to reflect on his decision to get revenge on the victim. *Id.*

Thus, as can be seen by the above summary of the Court of Criminal Appeals' opinion, the state court reviewed the petitioner's challenge to the sufficiency of the evidence; employed the constitutional standard to be used in determining the merits of such a claim, *see Jackson*, 443 U.S. at 319,[3] and concluded that a reasonable jury could have found the essential elements of first degree murder beyond a reasonable doubt.

---

[3] Circumstantial evidence which convinces a rational jury of each element of the offense beyond a reasonable doubt is sufficient to sustain a conviction. *Jackson,* 443 U.S. at 319. Such evidence need not be such as to exclude every reasonable hypothesis other than that of guilt. *Id.,* at 317 n. 9. The petitioner is simply wrong when he alleges otherwise.

12

A district court may not grant a writ of habeas corpus for any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). The petitioner's claim of insufficiency of the evidence does not pass either test and will be dismissed.

2. *Brady Claim*: The petitioner maintains, in this claim, that he was denied due process of law by the non-disclosure of a promise of leniency to a key witness. According to the petitioner, Alonzo Norman, his co-defendant in the murder case and in another case involving drug charges, was promised that his testimony against the petitioner in the murder case would make a difference in any sentence he subsequently received in the drug case. According to the petitioner, Norman received an illegal three-year sentence in the drug case after he testified against the petitioner. The petitioner contends that the prosecution's failure to provide information about the promise to the defense deprived him of his right to a fair trial.

The petitioner raised this claim initially before the trial court in a motion for a new trial and also on direct appeal, claiming that the prosecution did not disclose that it had an implicit agreement with Norman that it would drop certain charges against him and would be lenient with respect to other charges if he testified against the petitioner.

The Court of Criminal Appeals cited to *Brady v. Maryland*, 373 U.S. 83 (1963), and its related line of cases, for the rule that the prosecution is required to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. The state court recognized that impeachment evidence lies within *Brady's* scope, *Giglio v. United States*, 405 U.S. 150, 154 (1972), if it is material and not merely impeaching. *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). The state court explained that, in determining whether information is material, the inquiry to be made is whether, without the suppressed evidence, a defendant received a fair trial, which is understood as a trial resulting in a verdict worthy of confidence and *not* whether, with the evidence, he more likely than not would have received a different verdict. *Gayles*, 1999 WL 451830, at *5 (citing *Kyles,* 514 U.S. at 434). Finally, the state court observed that promises made to a witness in exchange for his testimony relate directly to the witness's credibility and must be disclosed by the prosecution. *Gayles*, 1999 WL 451830, at *5.

It then discussed evidence concerning the suppression issue which was presented at a hearing on the petitioner's motion for a new trial. Norman had testified that he was scared when he testified at trial because he had been charged with coercion of a witness, being an accessory after the fact to first degree murder, and multiple drug offenses. He further testified that his attorneys told him that the prosecutor could make no deals with him prior to his testimony, but that if he were to testify, the charges for coercion of a witness and being an accessory after the fact would have to be dropped and, moreover, that the prosecutor would be lenient with regard to the drug charges. He expressly stated that the prosecutor had never offered him anything in return for his testimony.

In an affidavit, Mike Kellum, Norman's attorney with respect to the charges of being an accessory after the fact and coercion of a witness, stated that the prosecutor had said that if Norman testified truthfully in the petitioner's trial, the "testimony would be appreciated and considered in any future plea offers regarding" the charges against Norman.

Deborah Huskins, Norman's attorney on the drug charges, that she had believed that if Norman testified truthfully at the trial, it would make a difference in any sentence he subsequently received in the drug case. Huskins also testified that, even though she believed it would benefit Norman to testify truthfully, "we

15

Case 2:04-cv-00202   Document 15   Filed 05/12/05   Page 15 of 18   PageID #: 79

had absolutely no agreement as to what plea if any we would be entering, the number of years, ranges, we--we did not discuss any specifics like that, not anything." Further, Huskins testified that she and Kellum had explained to Norman that the prosecutor had not made any definite offer of leniency in return for his testimony.

The Court of Criminal Appeals found that the petitioner had not shown that he had been promised anything definite,[4] but had merely established that the prosecutor would take Norman's decision to testify truthfully into "consideration" in any future plea negotiations. The state court first held that a unilateral belief that an agreement exists or an indefinite offer of "consideration" falls far short of constituting an actual agreement. It then concluded that the issue lacked merit, given the lack of evidence to show that the state's attorney had promised Norman anything definite in exchange for his testimony or that an agreement existed.

If this were not a habeas case, the Court would be inclined to view the prosecutor's statement that Norman's testimony would be "appreciated and considered in any future plea offers," together with Norman's subsequent testimony

---

[4] The Court of Criminal Appeals noted that the charge for being an accessory after the fact was dismissed for lack of supporting evidence; that the charge for coercion of a witness was dismissed because the victim did not want to prosecute; and that the prosecutor had expressly told the jury that the charge for being an accessory would be dropped. *Gayles*, 1999 WL 451820, at *5 n.2.

16

at the trial, as an indication that the prosecutor made a promise which led Norman rationally to expect leniency if he testified and that this induced him to testify.[5] Under 28 U.S.C. § 2254(d), however, it is not this Court's task to determine whether the state court's decision is incorrect, but whether it is objectively reasonable. *Williams*, 529 U.S. at 413; *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (to find an "unreasonable application"of federal law "it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied [federal law] incorrectly"). Thus, whether the state court was wrong to find that the prosecutor's promise was too indefinite to establish the existence of an agreement is not at issue.[6]

In *Giglio*, the Supreme Court found that, where there existed a formal, oral, immunity agreement between the prosecutor and a witness, the duty to disclose under *Brady* had been triggered. *Giglio*, 405 U.S. at 153-54. At the time of the

---

[5] At the hearing on the motion for a new trial, Huskins testified:
"They [Norman's three charges] were all tied in together. Now, that—that's where the problem came in as—as far as the leniency. Mr. Norman I think thought that it would be far less than what it was, which as I recall turned out to be around ten years..." New Trial Hrg.Tr. At 93).

[6] Subsequent rulings by the Tennessee Court of Criminal Appeals indicate that the prosecution's offer of consideration in any future plea negotiations might be viewed as a promise of leniency, subject to disclosure, if the issue were presented today. *See Brannan v. State*, 2002 WL 992404, * 9 (Tenn. Crim. App. May 15, 2002), *permission to app. denied* (Tenn. 2002) (holding that a prosecution's statement that it would give a defendant's application for a pretrial diversion "every consideration" is tantamount to a promise of leniency).

17

petitioner's direct appeal, however, there was no principle established in a Supreme Court case that extended the *Brady* disclosure rule to the kind of implied inducement or indefinite offer of consideration, as existed in this case. Therefore, the state court's decision disposing of this claim must be left undisturbed because the "unreasonable application" prong of § 2254 has not been met in this case.[7]

V. CONCLUSION

The respondent's motion to dismiss the petition as untimely will be **DENIED**; his motion for summary judgment will be **GRANTED** (Doc. 5); and this petition will be **DISMISSED**. A separate order will enter.

ENTER:

      s/Thomas Gray Hull
    THOMAS GRAY HULL
     SENIOR U. S. DISTRICT JUDGE

---

[7] To the extent that the state court's finding that there was no agreement constitutes a factual finding, this finding must be presumed correct since the petitioner has not refuted it by clear and convincing proof. 28 U.S.C. § 2254(d)(2).